**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| KATIE CHOI, | : | **Civil Action No. 24-06338-JKS-AME** |
| | : | |
| Plaintiff, | : | **OPINION and ORDER** |
| | : | |
| v. | : | |
| | : | |
| UNUM LIFE INSURANCE COMPANY | : | |
| OF AMERICA; et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ESPINOSA, U.S.M.J.**

      This matter is before the Court on the motion to compel discovery filed by plaintiff Katie Choi ("Plaintiff") [D.E. 21], which Defendants Unum Life Insurance Company of America and Unum Group (collectively "Unum"), oppose. The Court has considered this motion on the papers and, in its discretion, without oral argument, *see* Fed. R. Civ. P. 78(b). For the following reasons, the motion is denied.

**I.     BACKGROUND**

      Plaintiff filed this action under Section 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.* ("ERISA"), arising out of Unum's denial of her claim for long-term disability ("LTD") benefits under her employer-sponsored benefit plan. According to the Complaint, Plaintiff worked as a pharmacist for CVS, which maintained an LTD benefits plan issued and underwritten by Unum (the "Plan"). *See* Compl. ¶¶ 5, 10-12. The Complaint alleges Plaintiff ceased work in December 2020 due to physical impairments related to various medical conditions that prevented her "from performing sedentary work or any occupation requiring sustained upper extremity use." *Id.* ¶ 14. She thereafter made a timely claim

1

for LTD benefits under the Plan, and Unum approved her claim and began paying benefits.[1] *Id.* ¶¶ 16-17. However, by letter dated June 12, 2023, Unum alerted Plaintiff her claim for ongoing LTD benefits was denied, informing her it had identified gainful occupations she could perform despite her medical conditions.[2] *Id.* ¶ 18.

Plaintiff appealed the decision through the Plan's internal process and submitted evidence she alleges demonstrated her conditions prevented her from performing the duties of any gainful occupation. *Id.* ¶ 19. The Plan retained Dr. Neal Greenstein, a board-certified internal medicine physician, to review Plaintiff's medical evidence, and he concluded the evidence did not support any restrictions and limitations on Plaintiff's ability to work. *Id.* ¶¶ 20-21. According to the Complaint, Plaintiff pointed out various flaws in Dr. Greenstein's opinion, including that his "report was comprised mostly of boilerplate and formulaic language superficially supporting the denial" and that he "had concurrently authored largely identical reports [for Unum] to support the denial of two other LTD claimants." *Id.* ¶¶ 22-23. Plaintiff alleges that, although Unum was made aware of the unreliability of Dr. Greenstein's opinion, Unum nevertheless relied on it and upheld the claim determination on February 28, 2024. *Id.* ¶ 24.

After she exhausted her administrative remedies under the Plan, Plaintiff filed this action under ERISA § 502(a) to challenge Unum's adverse claim determination under the applicable arbitrary and capricious standard of review. *Id.* ¶¶ 27, 53-56. In relevant part concerning this discovery motion, the Complaint alleges Plaintiff's claim was wrongfully denied because Unum

---

[1] According to Jessica Berryman, an Unum director who supervises benefits specialists and has personal knowledge of Plaintiff's claim file, Plaintiff's LTD benefits claim was approved in 2021, following an investigation that included, among other things, obtaining medical and vocational information and consultation with Unum's reviewing physicians. *See* Berryman Decl. ¶ 3, attached to Opp'n Br. as Ex. 3. Berryman further asserts the benefits began on June 16, 2021, and the letter informing Plaintiff of the claim determination advised her the claim would continue to be evaluated based on updated information. *Id.*

[2] Berryman states the definition of "disability" under the Plan changes after 24 months of disability, and that such change took effect under Plaintiff's Plan on June 16, 2023. *Id.* ¶ 5.

operates under a "perpetual conflict of interest" as both the decision maker and payor of benefits under the Plan. *Id.* ¶¶ 28-29. It alleges Unum encourages employees to make claims decisions based on financial targets and claim denial goals and makes claims decisions on exclusive reliance on the opinions of its retained doctors. *Id.* ¶¶ 30-35, 43-46.

## II.    DISCUSSION

Plaintiff now moves to compel Unum to respond to discovery requests for information she maintains relates to Unum's alleged conflict of interest in handling her LTD benefits claim. Her discovery requests consist of seven requests for admission, five interrogatories, and eight requests for production she argues are relevant to Unum's conflict of interest and its impact on her claim denial. Among other things, the discovery requests seek to explore Unum's compensation and performance evaluations of those benefits specialists, directors, and other individuals involved in her LTD benefits claim review; financial metrics, recovery and claim closing targets, and other claims administration data Unum maintains; and information concerning the file-reviewing physicians' other work for Unum, in particular, their record of involvement with claims that are denied. Plaintiff also wishes to depose the Unum disability benefit specialist who denied her claim for LTD benefits, the director who oversaw that denial, and Dr. Greenstein. In short, Plaintiff seeks permission to pursue discovery of information beyond the administrative record created in connection with Unum's denial of her LTD benefits claim under the Plan.[3]

---

[3] In her moving brief, Plaintiff asserts she seeks discovery into Unum's conflict of interest and into the completeness of the administrative record. However, the latter topic is neither reflected in her written discovery requests nor developed in her arguments. Indeed, Plaintiff fails to set forth any reason such discovery is warranted. She does not identify any gaps in the administrative record or cite authority justifying discovery "merely to confirm that the record is complete." *Stallman v. First Unum Life Ins. Co.*, Civil No. 23-20975, 2024 WL 4988603, at *4 (D.N.J. Dec. 5, 2024) (denying request by ERISA plaintiff for discovery to ensure the administrative record pertaining to his claim is complete); *see also Goble v. Liberty Life Assur. Co. of Bos.*, Civil No. 12-6030, 2013 WL 5603871, at *9 (D.N.J. Oct. 11, 2013) (noting discovery beyond ERISA

In an action challenging an ERISA plan fiduciary's adverse benefits decision, judicial review of the merits of a Section 502(a) claim is generally limited to the administrative record, where, as here, the Plan conferred discretionary authority on the administrator.[4] *Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 271-272 (3d Cir. 2021); *see also Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 (3d Cir. 2010) (holding that, in ERISA actions to recover benefits, courts reviewing an administrator's decision for abuse of discretion "must base their review on the materials that were before the administrator when it made the challenged decision"). "The administrative record consists of the materials before the fiduciary who makes the benefit decisions on internal review, and it typically contains relevant plan documents (such as an insurance policy), the claim file (the claim, supporting information supplied by the claimant, as well as information related to the claim that was considered, collected, or generated by the fiduciary), and the fiduciary's final determination with respect to the claim." *Noga*, 19 F.4th at 272. The Third Circuit has held that, under the "ERISA record rule," supplementation of the administrative record during litigation is not permitted "under most circumstances," reasoning that material outside the record is usually irrelevant to the question of whether the administrator abused its discretion. *Howley*, 625 F.3d at 793 (citing *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n. 5 (3d Cir.2004)); *see also Noga*, 19 F.4th at 272-73 (discussing origin and rationale of ERISA record rule).

However, the Third Circuit recognizes an exception to the ERISA record rule to permit

___

plan's claim file not warranted as "Plaintiff has not shown that Defendants have selectively omitted information and produced an incomplete administrative record").

[4] The Complaint alleges the Plan decision cannot stand as arbitrary and capricious, a standard applicable when the "[ERISA] benefit plan gives the administrator … discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Howley*, 625 F.3d at 792 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also Noga*, 19 F.4th at 272 ("if a plan does confer discretionary authority on a fiduciary decision-maker, then a court reviews an adverse benefit determination for an abuse of discretion under the arbitrary-and-capricious standard.").

discovery into a fiduciary's alleged conflict of interest or bias. *Noga*, 19 F.4th at 273. In limited

circumstances, a plaintiff may supplement the administrative record to probe the existence and/or

severity of the conflict as it relates to the fiduciary's decision making process. *Id.* at 273-74. The

Circuit has reasoned such extra-record discovery may be warranted because, although potentially

relevant to the abuse of discretion review, information about the effect of a conflict of interest on

the fiduciary's adverse benefit decision may not appear in the administrative record. *Id.*

However, "[t]his exception to the ERISA record rule for structural conflicts is narrow and does

not allow supplementation of the record with information related to the claim or the review

process." *Id.* at 274.

Although the Third Circuit has not adopted a standard for determining whether conflict of

interest discovery may be pursued, Courts in this District have consistently required a plaintiff to

establish "a reasonable suspicion of misconduct by the fiduciary before permitting extra-record

discovery." *Stallman v. First Unum Life Ins. Co.*, Civ. No. 23-20975, 2024 WL 4988603, at *5

(D.N.J. Dec. 5, 2024) (citing various cases). This standard cannot be met solely based on the

ERISA plan's structural conflict of interest or general indications of misconduct by the fiduciary.

*Id.* Rather, to establish reasonable suspicion, a plaintiff must point to potential misconduct in

handling her specific claim, such as irregularities in the decision making process indicative of

bias or some factual basis for the possibility that the conflict of interest had an impact her claim

decision. *Id.* at *5-6 (noting Courts evaluating extra-record discovery requests in ERISA actions

have required a particularized demonstration of possible misconduct concerning the claim at

issue and applying that standard); *see also L.P. v. Crunchy Data Sols., Inc.*, Civ. No. 22-2004,

2023 WL 4457888, at *5 (D.N.J. July 11, 2023) ("a plaintiff must establish a good faith basis for

alleging bias, conflict of interest, or irregularity in the defendant's decision-making process by

demonstrating that the administrative record raises a reasonable suspicion of defendant's misconduct.") (cleaned up); *Irgon v. Lincoln Nat. Life Ins. Co.*, Civ. No. 13-4731, 2013 WL 6054809, at *6 (D.N.J. Nov. 15, 2013) ("[T]o permit Plaintiff additional discovery based on that conflict, Plaintiff must identify a reasonable suspicion that the conflict of interest somehow impacted Defendant's final decision of denial.").

Here, there is no dispute that Unum, as both claim administrator and payor under the Plan, has a structural conflict of interest. As noted above, that structural conflict, by itself, does not justify extra-record discovery. Plaintiff asserts there are particular facts demonstrating reasonable suspicion of Unum's misconduct in the handling of her claim and having an impact on her adverse claim determination. She proffers that Unum (1) has a long and persistent history of biased claims administration, (2) maintains procedures that promote financial goals over fair evaluation of claims, specifically, monthly denial targets that all claims handling employees are provided and pressured to meet, and (3) relies exclusively on the opinions of its retained physicians, in particular Dr. Greenstein, who consistently opine claimants do not have medically supported limitations. The Court considers each of the foregoing contentions, in turn.

First, Plaintiff's reliance on Unum's purported longstanding practice of administering claims in a biased, arbitrary, or otherwise improper manner fails to demonstrate reasonable suspicion of misconduct in the administration of *Plaintiff's* claim. The argument is rooted in Unum's entry into a Regulatory Settlement Agreement ("RSA") with state insurance regulators in 2004, which resulted from an investigation of Unum's allegedly unfair and systemic LTD claims handling practices and which imposed on Unum, among other things, a plan of corrective action. *See* Mot. Ex. 1. Plaintiff maintains there is evidence that Unum failed to correct its unfair practices, as required by the RSA, based on deposition testimony, given in another action in

2007, by a former Unum disability claims specialist. That individual claimed he was pressured by his director to close claims and meet denial goals during his 2005 to 2007 employment in Unum's Chattanooga office. From this testimony, Plaintiff extrapolates the conclusion that Unum's "AVPs and Directors constantly pressured lower-level claim-handling employees to meet these goals" and that such systemic wrongful practices persist notwithstanding the RSA, noting the director referenced in the 2007 deposition remains employed by Unum. Pl. Br. at 18.

 Plaintiff's conclusions about persistent and systemic misconduct are wildly speculative. They are based on an isolated deposition by one claims specialist who ceased working for Unum many years before Plaintiff even filed her LTD benefits claim, which, the Court notes, was initially approved. And, at bottom, the contention that some misconduct concerning pressure to deny otherwise meritorious claims may have occurred in this case is based on Unum's practices pre-dating the RSA, an agreement entered into two decades before the 2023 denial of Plaintiff's LTD benefits claim. This outdated information, with no apparent connection to Plaintiff's claim for benefits, falls far short of the reasonable suspicion required to justify extra-record discovery in this ERISA action. Indeed, various courts have similarly found reliance on the RSA, without more, insufficient to permit conflict of interest discovery in other ERISA actions challenging Unum's claims decisions. *See Stallman*, 2024 WL 4988603, at *6 (rejecting entry into RSA as indicative of misconduct concerning the benefits claim at issue, noting the temporal remoteness and the plaintiff's failure "to point to any nexus between First Unum's historical misconduct and any suspected misconduct pertaining to his case."); *Smith v. First Unum Life Ins.*, Civ. No. 19-298, 2020 WL 6281451, at *6 (S.D.N.Y. Oct. 21, 2020) (finding the allegations regarding Unum's historical misconduct failed to justify extra-record discovery because plaintiff did not provide "a factual basis to conclude that the Unum Decision Makers were influenced two

decades ago to persist in engaging in biased claim denials."); *Kamerer v. Unum Life Ins. Co. of Am.*, 251 F. Supp. 3d 349, 352 (D. Mass. 2017) ("This court will not assume that Unum is biased every time it denies a claim simply because it employed unfair claims practices more than a decade ago, particularly in light of changes to claim processing it has since made.").

Second, in an apparent attempt to link the misconduct of the distant past with Unum's current practices, Plaintiff further maintains that Unum's internal performance metrics demonstrate it continues to improperly prioritize profits, i.e., encourage claims denials, over fair claims administration. She further maintains Unum's purported misconduct is systemic and thus necessarily impacted its review and denial of Plaintiff's LTD benefits claim in 2023. In support of these contentions, Plaintiff points to evidence that Unum provides claims departments with a monthly recovery plan, which sets file closing goals and forecasts reserve funds expected to be released based on those terminations, and maintains a weekly target report, which tracks data in relation to the monthly goal. Plaintiff argues these financial metrics—together with testimony given by certain Unum assistant vice presidents, deposed in other ERISA actions, concerning the use of the metrics to evaluate claims departments' performance—illustrate "the ongoing pressure Unum exerts on its AVPs and Directors to meet claim-closure goals" and support her request for conflict of interest discovery, particularly requests seeking information about recovery plans, weekly reports, employee evaluations, and compensation.

However, the Court is not persuaded that Unum's tracking of claims resolution data, including financial metrics, and making such reports available to its department directors, supports the conclusion that Unum engages in bad faith conduct in determining claims generally and, more to the point, with respect to the denial of Plaintiff's claim. Indeed, the inference to be drawn from the evidence presented, at best, points to the fairly unremarkable fact that an

insurance carrier, which both administers and pays claims under an ERISA plan, keeps data on claims openings and terminations, among other metrics, that affect its reserves. Missing from Plaintiff's motion to compel discovery is any indication that the denial of *her* claim in 2023 was motivated or even influenced by a financial goal or otherwise tainted by some bias related to the recovery plans and/or weekly target reports.

To the contrary, according to the Unum director supervising the disability benefits specialist who denied Plaintiff's claim, neither that specialist nor the appeals specialist who upheld the determination considered or relied on claims metrics in making their decisions. *See* Berryman Decl. ¶¶ 14-15. She further states she is not given claim closure quotas or evaluated based on claim outcomes and does not advise the benefits specialists she supervises they must meet such quotas. *Id.* ¶ 14. The director adds that she and the specialists involved in Plaintiff's claim did not know the claims reserve amount and that claims and appeals professionals play no role in managing or reporting on Unum's finances and receive no advice or information from Unum's separate finance department in how to review claims. *Id.* ¶¶ 15-17.

Plaintiff argues the director's declaration does not dispel the reasonable suspicion of misconduct she has demonstrated, because, although she asserts that the claims department maintains separation from the finance department, the director does not dispute that Unum's AVPs and Directors have access to recover plan information and thus may be driven by financial and/or claims closing goals. However, the Court does not consider the director's sworn statement for the purpose of making a fact determination concerning Unum's internal processes, much less to suggest any finding concerning the merits of Plaintiff's ERISA claim. Rather, it raises the assertions made in the declaration to emphasize that Plaintiff's already attenuated connection between Unum's claims metrics and a purported financial motivation or other irregularity in

denying her claim is further undermined by the available record.

Third, Plaintiff asserts Unum has a company-wide policy or practice of deciding claims in exclusive reliance on the opinions of its retained medical professionals, who, according to Plaintiff, "overwhelmingly" conclude claimants have no medically supported limitations, notwithstanding the evidence demonstrating otherwise. Pl. Br. at 22. She maintains there is evidence Unum routinely disregards the opinion given by a claimant's treating physician and instead denies the claim based on its retained doctor's skewed conclusions. Plaintiff further maintains this practice impacted her own claim denial because Unum relied on Dr. Greenstein's opinion, despite its numerous shortcomings, to uphold the adverse benefits decision on appeal.

The Court will not dwell on Plaintiff's assertion that, as a general matter, Unum's claims review practice is fundamentally and systemically structured to serve its own financial interest in denying claims. Plaintiff selectively quotes from deposition and trial testimony given by a few claims specialists who testified in other cases, and who, by and large, stated that because claims specialists lack medical training, they must rely on the professionals' assessment of the evidence, not that they exclusively rely on their retained physician. They also testified they could not recall instances in which Unum relied on a treating physician when his or her opinion differed from the retained physician's review. Simply put, there is no factual support for Plaintiff's assertion of a broad practice or policy of disregarding a treating physician's opinion in the claim review process.

Instead, the Court considers this basis for seeking extra-record discovery only to the extent Plaintiff actually engages with the administrative record of her claim. In that regard, Plaintiff contends that Unum "relied exclusively on the flawed opinions of its retained physician Dr. Greenstein, to deny Plaintiff's claim even though his opinions were contradicted by the

objectively supported findings of Plaintiff's treating doctors." Pl. Br. at 25. She argues that Dr. Greenstein's opinion is flawed not only because it ignored the findings of Plaintiff's treating providers, based on physical exams, but also because it follows a pattern he uses across reports pertaining to other claims, in which he employs a largely identical paragraph to analyze the disability claim as insufficiently supported and conclude the claimant's reported severity of symptoms is disproportionate to the evidence. As this alleged pattern pertains to Plaintiff's claim, she asserts that Unum did not reconsider its claim denial on appeal, even when, according to Plaintiff, she demonstrated that Dr. Greenstein's report was mere "boilerplate" and contrary to the fact-based opinions of her doctors. Consequently, Plaintiff argues that the fact that Unum's denial of her claim is based, at least in part, on the weak and unreliable opinion of its retained doctor raises a reasonable suspicion of misconduct in its handling of Plaintiff' claim and warrants discovery into such misconduct, including the depositions of the Unum disability benefit specialist who denied her claim, his or her supervising director, and Dr. Greenstein.

This argument is, unlike the other proffered bases for extra-record discovery, at least rooted in the administrative record of Plaintiff's claim. However, the trouble with permitting discovery based on Plaintiff's critique of the soundness of Dr. Greenstein's report is that it appears to go to the merits of her ERISA claim, not to any alleged bias or conflict of interest that impacted Unum's denial of Plaintiff's claim for LTD benefits. Plaintiff finds significant fault with Dr. Greenstein's opinion and with Unum's reliance thereon, despite the fact that, in the administrative appeal, she made Unum aware of various grounds for rejecting it. Although couched in the language of misconduct, Plaintiff's argument essentially maintains that Unum improperly credited what she characterizes as Dr. Greenstein's conclusory opinion and disregarded other, more compelling evidence—in her view—in the administrative record. She

does not indicate how Unum's consideration of Dr. Greenstein's opinion raises a reasonable suspicion of misconduct in handling her claim. Her argument for permitting discovery concerning Dr. Greenstein's reports and their impact on Unum's adverse benefits decision amounts to a challenge to Unum's claim determination for abuse of discretion, and it is well-settled that no discovery into the merits may be pursued in an ERISA action challenging an adverse benefits determination under that standard of review. *Noga*, 19 F.4th at 272; *Howley*, 625 F.3d at 793.

Additionally, to the extent Plaintiff maintains Unum's reliance on Dr. Greenstein's opinion is suspect, or indicative of some irregularity, because he routinely concludes the medical evidence does not substantiate disability, her request for statistics on claims in which Dr. Greenstein has been involved is simply not warranted. Plaintiff has sought information on the aggregate number of claims for which Dr. Greenstein and Dr. Stephen Kirsh, another doctor involved in reviewing her claim, have provided a written medical opinion and the number of claims in that doctor's opinion found the claimant's disability supported by the evidence. However, the Third Circuit has held that such "batting average" discovery is not probative of any bias or conflict of interest and thus properly rejected as outside the scope of Federal Rule of Civil Procedure 26(b)(1), which requires discovery to be both relevant and proportional to the needs of the case. *Reichard v. United of Omaha Life Ins. Co.*, 805 F. App'x 111, 116-17 (3d Cir. 2020).

In sum, the Court finds that none of Plaintiff's proffered factual bases for extra-record discovery, individually or considered together, give rise to a reasonable suspicion that Unum engaged in misconduct in handling and denying her LTD benefits claim. And, apart from failing to link some indication of bias or irregularity in the determination of her claim to narrowly tailored discovery requests, Plaintiff seeks to compile wide-ranging discovery delving into

Unum's overall organizational structure, financial metrics and targets concerning claims departments, and employee evaluation and compensation information. Her requests are not only unjustified under the conflict of interest exception to the ERISA record rule, but not proportional to the needs of this case under Rule 26(b).

## III.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to establish a reasonable suspicion of misconduct sufficient to justify discovery beyond the administrative record in this ERISA action. Accordingly,

**IT IS** on this 6th day of August 2025,

**ORDERED** that Plaintiff's motion to compel discovery [D.E. 21] is **DENIED**.

/s/ *André M Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge